# IN THE UNITED STATES DISTRICT COURT FOR THE
# DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | |
|---|---|
| **CALIFORNIA-AMERICAN WATER COMPANY**<br><br>Plaintiff,<br><br>v.<br><br>**THE 3M COMPANY (f/k/a Minnesota Mining and Manufacturing, Co.); ANGUS FIRE; THE ANSUL COMPANY; BUCKEYE FIRE EQUIPMENT CO.; BUCKEYE FIRE PROTECTION COMPANY; CHEMGUARD; NATIONAL FOAM, INC.; TYCO FIRE PRODUCTS LP; JOHN DOE DEFENDANTS 1-50,**<br><br>Defendants. | MDL No.: 2:18mn-2873-RMG<br><br>**COMPLAINT**   C/A No.: 2:19-cv-1784-RMG<br>**JURY DEMAND** |

California-American Water Company ("Cal Am" or "Plaintiff") files this Complaint against the Defendants named herein and in support thereof alleges as follows:

## SUMMARY OF THE CASE

1.  Cal Am brings this action for damages, contribution and reimbursement of costs incurred, and which continue to be incurred, to address the presence of Polyfluoroalkyl substances or "PFAS" chemicals—including but not limited to Perfluorooctanoic acid ("PFOA"), Perfluorooctanesulfonic acid ("PFOS"), Perfluorohexanoic acid ("PFHxA"), Perfluoropentanoic acid ("PFPA"), Perfluoroheptanoic acid ("PFHpA"), Pentafluorobenzoic acid ("PFBA"), Perfluorobutanesulfonic acid ("PFBS"), Perfluorononanoic acid ("PFNA"), Perfluorodecacanoic

acid ("PFDA"), and Perfluorohexane Sulfonic Acid ("PFHS"), as well as any and all hazardous chemicals produced by Defendants (collectively referred to herein as "PFAS"), — found in Cal Am's Nut Plains Well, a groundwater supply well owned and operated by Cal Am.  As the manufacturers and sellers of products that contain PFAS compounds, Defendants The 3M Company (f/k/a Minnesota Mining and Manufacturing Co.), Angus Fire, The Ansul Company, Buckeye Fire Equipment Co., Buckeye Fire Protection Company, Chemguard, National Foam, Inc., Tyco Fire Products, LP, and John Doe Defendants 1-50 (collectively "Defendants") are responsible for PFAS contaminants released into the groundwater that serves as a supply source for Cal Am's public water supply systems.

2. For years, Defendants manufactured, sold, and distributed PFAS compounds and products containing PFAS chemicals.  These products include the firefighting suppressant agent, Aqueous Film Forming Foam ("AFFF") that contains those compounds, for use at airports and military facilities throughout the State of California.

3. From the 1970s to 1984, Defendants' AFFF products were used at Mather Air Force Base ("MAFB") located near Rancho Cordova, California.  Studies have connected the use of Defendants' AFFF products to PFAS groundwater contamination in the vicinity of MAFB and specifically to the contamination in Plaintiff's Nut Plains Well.

4. MAFB ceased operations in 1984 under the Base Realignment and Closure Act, after which MAFB was listed on the federal Environmental Protection Agency's CERCLA (also known as "Superfund") National Priorities List for cleanup of contaminated soil and groundwater.  The chosen remedy for groundwater remediation at relevant areas of the MAFB involved extraction of the groundwater, followed by air stripping of numerous contaminants and reinjection of the treated water into the regional aquifer.  Because air stripping is ineffective in

2

removing PFAS compounds, the PFAS contaminants present from the use of Defendants' AFFF products at MAFB remained in the treated water and re-entered the aquifer upon reinjection, resulting in contamination of Cal Am's Nut Plains Well and requiring Cal Am to remove the well from service or treat the well water to assure the delivery of safe drinking water to its customers.

5.      Defendants knew, or should have known, that PFAS and related constituents present unreasonable risks to human health, water quality, and the environment and of the dangers associated with these compounds. Yet, Defendants handled, discharged and were otherwise responsible for placing PFAS products into the stream of commerce and for the release of PFAS into the environment without sufficient containment or caution. Defendants' acts and omissions resulted in the presence of these compounds in a critical source of water relied upon by Cal Am to supply water to its customers, and in particular the aquifer from which Cal Am draws water via the Nut Plains Well. As a result of the occurrence of Defendants' PFAS, PFAS containing products, and related compounds in the environment, Cal Am has been required to incur costs of sampling and investigation of PFAS contamination, implement capital improvements, and incur ongoing operations and maintenance costs and future damages in order to remove and treat for the presence of PFAS in its public water supply at the Nut Plains Well.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction over this action under federal diversity, pursuant to 28 U.S.C. § 1332, as the parties are completely diverse and the amount-in-controversy exceeds $75,000.

7.      Plaintiff brings this civil action directly in *In Re: Aqueous Film-Forming Foams Products Liability Litigation*, Multi-District Litigation ("MDL") No. 2873. Plaintiff files directly

3

in this venue, the United States District Court for the District of South Carolina, Charleston Division, as allowed under the provisions of Paragraphs 25-29 of this Court's Case Management Order No. 3, dated April 26, 2019 (Doc. # 72). Plaintiff designates the United States District Court for the Eastern District of California, Sacramento Division, as its "Home Venue" under 28 U.S.C. § 1391 because a substantial part of the events giving rise to this Complaint occurred in that District. But for this Court's Order permitting direct filing in this MDL, Plaintiff would have filed in its Home Venue.

## PLAINTIFF

8.   Plaintiff Cal Am is a California corporation with its principal place of business at 655 West Broadway, Suite 1410, San Diego, California 92101. Cal Am is a direct, wholly owned subsidiary of American Water Works Company, Inc., the largest publicly traded water and wastewater utility company in the United States.

9.   The Nut Plains Well is a groundwater supply well that is part of the Suburban-Rosemont drinking water supply system, which is a Community Water System (System No. CA3410010) under the Safe Drinking Water Act, 42 U.S.C. § 300f(15) that is owned and operated by Cal Am. Cal Am acquired the Nut Plains Well, which was installed in 1962, from Citizens Utilities Company through a 2002 Asset Purchase Agreement. Since that time, Cal Am has operated the Nut Plains Well as a permitted drinking water source (PS Code 3410010-10). The Nut Plains Well was been used continuously for drinking water supply purposes from at least 2002 to 2016.

10.   Cal Am's public water systems serve approximately 180,000 service connections in communities throughout the State of California. Cal Am's Suburban-Rosemont system alone

serves over 16,000 service connections. Cal Am relies on groundwater aquifers to supply water for its public water systems, which are served by wells such as the Nut Plains Well.

## **DEFENDANTS**

11. Defendant The 3M Company (f/k/a Minnesota Mining and Manufacturing Company) ("3M") is a Delaware corporation, with its principal place of business located at 3M Center, St. Paul, Minnesota 55133.

12. Through at least 2002, 3M manufactured PFOS for use in AFFF and other products, and it manufactured AFFF that contained PFAS compounds.

13. Defendant Angus Fire ("Angus") is part of Angus International, and has its corporate headquarters in Bentham, United Kingdom. Angus Fire maintains a place of business in the United States at 141 Junny Road, Angier, North Carolina 27501.

14. At all times relevant, Angus manufactured fire suppression products, including AFFF that contained PFAS compounds.

15. Defendant The Ansul Company (hereinafter "Ansul") is a Wisconsin corporation, with its principal place of business at One Stanton Street, Marinette, Wisconsin 54143.

16. At all times relevant, Ansul manufactured fire suppression products, including AFFF that contained PFAS compounds.

17. Defendant Buckeye Fire Equipment Company ("Buckeye") is a North Carolina corporation, with its principal place of business at 110 Kings Road, Kings Mountain, North Carolina 28086.

18. At all times relevant, Buckeye manufactured fire suppression products, including AFFF that contained PFAS compounds.

5

19. Chemguard is a Wisconsin corporation, having a principal place of business at One Stanton Street, Marinette, Wisconsin 54143.

20. At all times relevant, Chemguard manufactured fire suppression products, including AFFF that contained PFAS compounds.

21. National Foam, Inc. (a/k/a Chubb National Foam) (National Foam, Inc. and Chubb National Foam are collectively referred to as "National Foam") is a Pennsylvania corporation, with its principal place of business at 350 East Union Street, West Chester, Pennsylvania 19382.

22. At all times relevant, National Foam manufactured fire suppression products, including AFFF that contained PFAS compounds.

23. Upon information and belief, Defendants John Does 1-50 also manufactured and sold products that contain PFAS compounds.  Plaintiff Cal Am presently lacks information sufficient to specifically identify the names of Defendants sued herein under the fictitious names DOES 1 through 50.  Cal Am will amend this Complaint to show their true names if and when they are ascertained.

## POLYFLUOROALKYL SUBSTANCES

24. PFAS compounds are a family of manmade chemicals, also known as perfluorochemicals ("PFCs"), which have been used for decades to make products that resist heat, oil, stains, grease and water.

25. In the 1940s and 1950s, 3M began creating PFAS chemicals and incorporating them into their products after recognizing their surfactant properties.  Over the years, PFAS chemicals were sold to other companies for use in AFFF and a variety of other products,

6

including stain resistant carpeting and upholstery, clothing, paper packaging for food, water and grease resistant cookware.

26. AFFF was introduced commercially in the mid-1960s and rapidly became the primary fire-fighting foam in the United States and other parts of the world. AFFF is a Class-B firefighting foam, which is water-based and used to extinguish fires that are difficult to fight, particularly those that involve petroleum or other flammable liquids.

27. AFFF's are synthetically formed by combining fluorine free hydrocarbon foaming agents with highly fluorinated surfactants. When mixed with water, the resulting solution has the characteristics needed to produce an aqueous film that spreads across the surface of a hydrocarbon fuel. It is this film formation feature that provides fire extinguishment and is the source of the designation, aqueous film forming foam.

28. PFASs are extremely persistent in the environment and resistant to typical environmental degradation processes. In addition, they are thermally stable synthetic organic contaminants, are likely carcinogenic, and have been shown to correlate with thyroid disease and immune deficiencies. PFASs also have high water solubility (mobility) and low biodegradation (persistence).

29. PFASs, in particular PFOS and PFOA, have been identified as "emerging contaminants" by the U. S. Environmental Protection Agency ("EPA"). This term describes contaminants about which the scientific community, regulatory agencies and the general public have a new and increasing awareness or understanding about how they move in the environment or affect public health.

7

30. PFASs, like other emerging contaminants, have become the focus of active research and study, which means that new information is released periodically regarding the effects on the environment and human health as a result of exposure to the chemicals.

31. Certain PFAS compounds, such as perfluorooctane sulfonate ("PFOS") and PFOA (which is also known as "C8" because it contains eight carbon compounds), have been the focus of the California Division of Drinking Water ("DWW") and EPA investigations.

32. EPA studies have indicated that exposure to PFOA and PFOS over certain levels can result in adverse health effects, including but not limited to developmental effects to fetuses during pregnancy or to breastfed infants (e.g., low birth weight, accelerated puberty, skeletal variations), cancer (e.g., testicular, kidney), liver effects (e.g., tissue damage), immune effects (e.g., antibody production and immunity), thyroid effects and other effects (e.g., cholesterol changes).

33. In January of 2009, the EPA established a drinking water Provisional Health Advisory Level ("HAL") for PFOA and PFOS, the two PFAS compounds about which it had the most toxicological data. EPA set the Provisional HAL at 0.4 parts per billion (ppb) for PFOA and 0.2 ppb for PFOS.

34. In May 2016, EPA issued new HALs for PFOA and PFOS, identifying 0.07 ppb (or 70 parts per trillion (ppt)) as the concentration of PFOA and/or PFOS in drinking water at or below which health effects are not anticipated to occur over a lifetime of exposure.

35. In February 2019, EPA announced an Action Plan to address PFAS contamination that includes initiating steps to establish federal Maximum Contaminant Levels ("MCLs") for PFOA and PFOS in drinking water.

36. The California Division of Drinking Water ("DDW") has adopted the recommendation of the state Office of Environmental Health Hazard Assessment ("OEHHA") and set Notification Levels at 13 parts per trillion (ppt) for PFOS and 14 parts per trillion (ppt) for PFOA. Water systems with wells that contain contaminants above these levels must notify their customers of the presence of PFAS contamination. DDW has also set PFOS and PFOA Response Levels at the same level as EPA's current HAL of 70 ppt. In addition to the required public notifications, DDW recommends removing the source from service or providing treatment when the concentration exceeds the notification levels, and removal of the source from service when the concentration level cannot be reduced below 70 ppt. https://www.waterboards.ca.gov/drinking_water/certlic/drinkingwater/PFOA_PFOS.html.

37. In connection with its emerging contaminant studies, EPA implemented an Unregulated Contaminant Monitoring Rule Number 3 in 2012 ("UCMR 3"), which was designed to collect nationwide information regarding the occurrence of PFAS contamination in the public's water supply.

38. UCMR 3 required sampling of Public Water Systems ("PWSs") serving more than 10,000 people (i.e., large systems) and 800 representative PWSs serving 10,000 or fewer people (i.e., small systems) for 21 chemicals, including a number of PFASs, during one consecutive twelve month period in the timeframe between 2013 through 2015.

39. In October of 2014 and April of 2015, Cal Am participated in the UCMR 3 sampling for its facilities that serve more than 10,000 people. The Nut Plains Well was one of the wells sampled. Based on these initial results, Cal Am took the Nut Plains Well out of service until remedial measure could be implemented.

9

40. Further sampling in 2017 confirmed the presence of PFAS in the Nut Plains Well above the EPA's health advisory level of 70 ppt.

41. As manufacturers, sellers, handlers and dischargers of PFAS compounds, and products containing PFAS, Defendants knew or should have known that the inclusion of PFAS chemicals in any products presented an unreasonable risk to human health and the environment.

42. Defendants knew or should have known that PFAS compounds are highly soluble in water, highly mobile, extremely persistent, and highly likely to contaminate water supplies if released to the environment.

43. Defendants knew or should have known of the adverse impacts from PFAS compounds to human health and the environment both before and during the period in which they manufactured and sold PFAS compounds and products containing PFAS compounds with no warnings or instructions on use or disposal to avoid environmental contamination, including contamination of public water supplies.  Such manufacture and sale constitutes reckless disregard for human health and the environment.

44. Defendants' actions have directly resulted in contamination of the Nut Plains Well.  Because Defendants' PFAS has contaminated the aquifer that serves as the source for Cal Am's public water supply system of which the Nut Plains Well is a part, the contamination of the Nut Plains Well is recurring and continuing.

## CAL AM WATER SYSTEM IMPROVEMENTS

45. Cal Am is committed to the supply of potable drinking water consistent with federal and state guidelines and requirements.  Cal Am must therefore implement remedies to assure that the water it supplies to its customers meets these standards.

46. As a direct result of Defendants' action and inactions, Cal Am has had to address PFAS contamination in the vicinity of MAFB. In doing so, Cal Am has conducted and continues to conduct sampling, studies and investigations related to PFAS, which requires funding by Cal Am, including costs for its personnel to supervise the assessments, costs to develop PFAS treatment approaches, and costs to analyze available alternatives.

47. In August 2017, Cal Am installed and began operation of a Granular Activated Carbon ("GAC") treatment system at the Nut Plains Well. The installation costs incurred by Cal Am for the GAC system amounted to $1,292,899.12. Cal Am has thus far incurred additional operation and maintenance costs of over $68,000.

48. Cal Am has incurred, and will continue to incur, significant costs related to PFAS contamination in the Nuts Plains Well. Operation and maintenance measures for these improvements will be ongoing and add further to the costs that Cal Am will incur to address Defendants' PFAS contamination.

## CAUSES OF ACTION

### COUNT ONE – STRICT LIABILITY (DEFECTIVE DESIGN)

49. Plaintiff Cal Am hereby incorporates by reference the allegations set forth in paragraphs 1-48 of this Complaint as if they were set forth fully herein.

50. Defendants engaged in the design, manufacturing, marketing, and sales of PFAS chemicals and products containing PFAS, resulting in contamination of the environment, including the groundwater that serves as the water source for Plaintiff's Suburban-Rosemont public water supply system, and in particular the Nut Plains Well, thereby causing damage to Plaintiff.

51. As manufacturers of PFAS-containing products, Defendants had a strict duty not to place into the stream of commerce PFAS compounds and PFAS-containing products that are defective and unreasonably dangerous.

52. Defendants' PFAS products were defective in design and formulation when they left the hands of Defendants.

53. Defendants knew or should have known of the persistence and high mobility of PFAS in the environment, and the foreseeable risk that their PFAS and PFAS-containing products would be discharged, released, or disposed of in the environment.

54. By causing PFAS contamination and the resulting impact to Plaintiff's Suburban-Rosemont public water supply system, including the Nut Plains Well, Defendants engaged in marketing products that are not reasonably safe and are unreasonably dangerous, for which they are strictly liable.

55. Cal Am has incurred, and will continue to incur, investigation, sampling, treatment system design, acquisition, installation, operations and maintenance, and other costs and damages related to PFAS contamination in the Nut Plains Well.

## COUNT TWO – STRICT LIABILITY (FAILURE TO WARN)

56. Plaintiff Cal Am hereby incorporates by reference the allegations set forth in paragraphs 1-48 of this Complaint as if they were set forth fully herein.

57. Defendants engaged in the design, manufacturing, marketing, and sales of PFAS chemicals and products containing PFAS, which Defendants knew or should have known, would result in contamination of the environment, including the groundwater that serves as the water source for Plaintiff's public water supply systems, and in particular the Nut Plains Well, thereby causing damage to Plaintiff.

12

58. Defendants knew or should have known of the adverse impacts the exposure to its PFAS compounds would have on the environment and the activities and rights of others.

59. Defendants knew or should have known of the persistence and high mobility of PFAS in the environment, and the foreseeable risk that their PFAS and PFAS-containing products would be discharged, released, or disposed of in the environment.

60. Defendants failed to provide warnings or instructions sufficient to notify the users of the dangers inherent in their products or of methods of use that could reduce or eliminate those dangers.

61. Defendants' failure to provide notice or instruction regarding the dangers to human health and the environment rendered Defendants' PFAS and PFAS-containing products unreasonably dangerous for the purposes intended and promoted by Defendants.

62. This failure to warn or adequately instruct regarding the dangers associated with use of these products directly and proximately caused harm to Plaintiff.

63. As a result of Defendants' failure to warn or instruct, Cal Am has incurred, and will continue to incur, investigation, sampling, treatment system design, acquisition, installation, operations and maintenance, and other costs and damages related to PFAS contamination in the Nut Plains Well.

## COUNT THREE – NEGLIGENCE

64. Plaintiff Cal Am hereby incorporates by reference the allegations set forth in paragraphs 1-48 of this Complaint as if they were set forth fully herein.

65. Defendants had a duty to exercise due or reasonable care in the manufacture, distribution, and use of its PFAS chemicals and PFAS-containing products so as to avoid harm to those who would be foreseeably injured by PFAS environmental contamination.

66. Defendants were under duty to comply with California Civil Code section 3479 and breached that duty by causing PFAS contamination in Plaintiff's Nut Plains Well. Section 3479 is intended to prevent injuries to property and the free use and enjoyment thereof. Section 3479 is intended to protect property owners and possessors such as Plaintiff from undue interference with their property rights.

67. Defendants knew or should have known that their PFAS products would result in the release, discharge, or disposal of PFAS compounds into the environment that would lead to contamination of drinking water supplies and hazards to human health if not treated.

68. By failing to exercise due care in the design, manufacturing, marketing, and sale of PFAS and their PFAS-containing products, Defendants breached their duty to avoid harm to Plaintiff.

69. As a result of Defendants' negligence, Plaintiff Cal Am has incurred, and will continue to incur, investigation, sampling, treatment system design, acquisition, installation, operations and maintenance, and other costs and damages related to PFAS contamination in the Nut Plains Well.

70. Defendants' acts were willful, wanton or reckless and conducted with a reckless indifference to the rights of Plaintiff.

71. As a direct and proximate result of Defendants' actions and omissions, Plaintiff has suffered and continues to suffer damages.

### COUNT FOUR – PRIVATE NUISANCE

72. Plaintiff hereby incorporates by reference the allegations set forth in paragraphs 1-48 of this Complaint as if they were set forth fully herein.

73. Through Defendants' acts and omissions, Defendants' PFAS and PFAS-containing products have directly and proximately caused environmental contamination and health hazards that have unreasonably interfered with, and continue to interfere with, Plaintiff's use and enjoyment of its Suburban-Rosemont public water supply system, the Nut Plains Well, and the groundwater sources that supply the system and the well.

74. The private nuisance created by Defendants is continuing.

75. Defendants have failed, and continue to fail, to abate the private nuisance.

76. As a result of the private nuisance, Plaintiff has suffered, continues to suffer, and will in the future suffer significant harm and damages, including investigation and sampling costs, costs of abatement including treatment system design, acquisition, installation, operations and maintenance costs, and other costs and damages related to the detection, treatment and removal of PFAS constituents that have and will continue to migrate into Plaintiff's Nut Plains Well.

77. Defendants knew that their actions and omissions as described herein would cause injury and damage, including the contamination of Plaintiff's public drinking water supply system, including the Nut Plains Well. Defendants' acts and omissions' were performed knowingly, willfully, and with oppression, fraud and/or malice. Defendants' promotion of the sales of its PFAS products were undertaken in conscious disregard for the probable dangerous consequences of that conduct and its reasonably foreseeable impacts on the public, thereby entitling Plaintiff to an award of punitive damages so as to punish Defendants and compensate for the aggravating circumstances sustained by Plaintiff.

## **COUNT FIVE – PUBLIC NUISANCE**

78. Plaintiff hereby incorporates by reference the allegations set forth in paragraphs 1-48 of this Complaint as if they were set forth fully herein.

79. Through Defendants' acts and omissions, Defendants' PFAS and PFAS-containing products have directly and proximately caused environmental contamination that has unreasonably interfered with, and continues to interfere with, Plaintiff's right to a clean environment, which right Plaintiff holds in common with members of the public, and which right is specifically permitted.

80. Through Defendants' acts and omissions, Defendants' PFAS and PFAS-containing products have directly and proximately caused environmental contamination that has unreasonably interfered with, and continues to interfere with, Plaintiff's right to the use of groundwater as a source of potable water, which right Plaintiff holds in common with members of the public, and which right is specifically permitted.

81. The public nuisance created by Defendants is continuing.

82. Defendants have failed, and continue to fail, to abate the public nuisance.

83. As a result of the public nuisance, Plaintiff has suffered, continues to suffer, and will in the future suffer significant harm and damages special to Plaintiff and different in kind from those the general public may have suffered, including investigation and sampling costs, costs of abatement including treatment system design, acquisition, installation, operations and maintenance costs, and other costs and damages related to the detection, treatment and removal of PFAS constituents that have and will continue to migrate into Plaintiff's Nut Plains Well.

84. In addition to payment of Plaintiff's damages and abatement costs, Defendants should be required by injunction to abate the nuisances they have created.

## COUNT SIX – TRESPASS

85. Plaintiff hereby incorporates by reference the allegations set forth in paragraphs 1-48 of this Complaint as if they were set forth fully herein.

86. Plaintiff is the owner and is in possession of the Nut Plains Well that is a part of Plaintiff's Suburban-Rosemont drinking water supply system, which accesses the groundwater in to supply drinking water to the public.

87. Plaintiff has the rights to use of the groundwater in the state of California for purposes of supplying drinking water to the public though its Suburban-Rosemont drinking water supply system.

88. Plaintiff has not extended permission to Defendants to allow PFAS contamination to enter the Nut Plains Well or any of Plaintiff's water supply wells.

89. Defendants knew or should have known when they marketed their PFAS products that such products had a propensity to infiltrate groundwater aquifers and thereby contaminate Plaintiff's wells and pose a threat to the public drinking waters supplied by Plaintiff.

90. Defendants' actions and omissions each constitute a substantial factor in the contamination of Plaintiff's wells and each Defendant aided and abetted and is jointly responsible for the trespasses and injuries and damages resulting therefrom.

91. Defendants' actions and omissions directly and proximately caused harm to Plaintiff.

## COUNT SEVEN – LIABILITY UNDER CALIFORNIA CIVIL CODE SECTION 1882

92. Plaintiff Cal Am hereby incorporates by reference the allegations set forth in paragraphs 1-48 of this Complaint as if they were set forth fully herein.

93. Plaintiff is a utility and operates a water system.

94. The water that is pumped from Plaintiff's wells is property owned or used by Plaintiff to provide utility services.

95. The groundwater that supplies Plaintiff's wells is property owned or used by Plaintiff to provide utility services.

96. By causing the introduction of PFAS into Plaintiff's Nut Plains Well and the groundwater that supplies the well as alleged herein, Defendants injured, altered, interfered with, and/or otherwise prevented property owned or used by Plaintiff from performing its normal or customary function in Plaintiff's provision of utility services.

97. As a direct and proximate result of Defendants' acts and omissions as alleged herein, Plaintiff has incurred, and will continue to incur, investigation, sampling, treatment system design, acquisition, installation, operations and maintenance, and other costs and damages related to PFAS contamination in the Nut Plains Well, for which Defendants are liable under California Civil Code Section 1882.1.

98. Pursuant to California Civil Code Section 1882.2, Defendants are liable for three times the amount of Plaintiff's actual damages, plus the costs of this suit and reasonable attorneys fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff California American Water ("Cal Am") respectfully requests that this Court:

  a. Enter judgment finding Defendants jointly and severally liable for all costs and damages incurred by Plaintiff, including but not limited to prior, interim and future capital as well as operation and maintenance costs related to PFAS contamination in Plaintiff's Nut Plains Well; including the reasonable costs of

sampling, investigations, and assessment of injury, and destruction or loss resulting from PFAS contamination;

b. Enter judgment finding Defendants liable for punitive damages;

c. Enter judgment finding Defendants liable for consequential damages;

d. Enter judgment requiring, via injunction, Defendants to abate the nuisance they have created;

e. Award Plaintiff treble damages, pursuant to California Civil Code Section 1882.2;

f. Award Plaintiff Cal Am costs and reasonable attorney fees incurred in prosecuting this action, together with prejudgment interest, to the full extent permitted by law; and

g. Award Cal Am such other relief as this Court deems appropriate.

## **DEMAND FOR JURY TRIAL**

Demand is hereby made for a trial by jury.

        Attorneys for the Plaintiff

        /s/ J. Nixon Daniel, III
        J. Nixon Daniel, III
        Mary Jane Bass
        BEGGS & LANE, RLLP
        501 Commendencia Street
        Pensacola, FL  32502
        (850) 432-2451
        jnd@beggslane.com
        mjb@beggslane.com

        T. Roe Frazer II
        Thomas Roe Frazer III
        FRAZER PLC
        1 Burton Hills Boulevard, Suite 215
        Nashville, Tennessee 37215
        (615) 647-0990
        roe@frazer.law
        trey@frazer.law

Frederick T. Kuykendall
THE KUYKENDALL GROUP, LLC
356 Morphy Ave., Suite B
Fairhope, AL 36532
(205) 434-2866
ftk@thekuykendallgroup.com

Gregory A. Cade
ENVIRONMENTAL LITIGATION GROUP, P.C.
2160 Highland Avenue South
Birmingham, Ala. 35205
205 328-9800
gregc@elglaw.com

Christiaan A. Marcum (Fed. I.D. # 7556)
RICHARDSON PATRICK
WESTBROOK & BRICKMAN, LLC
1037 Chuck Dawley Blvd., Bldg. A
Mount Pleasant, SC 29464
cmarcum@rpwb.com
Telephone: (843) 727-6500

Dated: June 21, 2019